37 C.C.P.A. (Patents)

## In re WEIGEL.
### Patent Appeals No. 5681.

United States Court of Customs and
Patent Appeals.
June 30, 1950.

Hyde, Meyer, Baldwin & Doran, Cleveland, Ohio (George S. Baldwin and Thomas J. Doran, Cleveland, Ohio, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of claims numbered 2, 3, 7, 8, 9, and 11 of appellant's application for patent for a method of expressing oil from oil bearing proteinaceous material. No claim was allowed. Others (10 and 12) were disallowed but not appealed.

At its outset the specification recites: " * * * While more particularly applicable to the treatment of many kinds of oil bearing proteinaceous materials, such as various nuts, seeds and the like, it will be more particularly described with reference to flaxseed and soy beans. Under some circumstances the invention also may be applicable for use in the removal of oil from proteinaceous materials of animal origin."

It does not seem to be questioned that all six appealed claims stand or fall together; that is, as stated in the brief of the Solicitor for the Patent Office, "there is no contention here that any one of the appealed claims has any limitation which differentiates it patentably from any other claim." Claim 2 was selected by the board as representative, and we here reproduce it along with claim 7, upon which latter claims 8 and 9 are dependent. Claim 7 seems to be the broadest of the claims on appeal.

"2. A process for treating oil bearing proteinaceous material of vegetable origin to express the liquid content therefrom, comprising heating said material for a period of at least 30 minutes at a temperature at least 10 degrees lower than the predetermined optimum oil-expressing temperature for the particular material, immediately thereafter subjecting said material for approximately ten minutes to a conditioning treatment to reduce and stabilize the moisture content, at a temperature higher than the first heating temperature but not higher than said optimum oil-expressing temperature, and, at the conclusion of said conditioning treatment, without substantial loss of time or temperature, subjecting the material to continuous expressing action at said optimum temperature, whereby the oil is expressed therefrom.

"7. A process for treating oil bearing proteinaceous material of vegetable origin to remove oil therefrom, comprising collecting a mass of the material which at any time is in quantity of the order of more than twenty-five times the quantity then

undergoing expression, continuously supplying additional material to the mass at an inlet and continuously releasing it therefrom at an outlet at substantially the rate of expression, subjecting the material as it advances in the mass from the inlet to the outlet to a heating treatment with gradual rise of temperature to a maximum value definitely lower than the predetermined optimum oil-expressing temperature for the particular material, then, without substantial loss of temperature or time, subjecting the released material in smaller quantity to a conditioning treatment for a period of shorter duration than the first heating treatment, to reduce and stabilize its moisture content at the optimum value for expressing with a gradual temperature rise to said optimum temperature, and finally, again without substantial loss of time or temperature, subjecting the material to continuous expressing action under said optimum conditions of temperature and moisture content."

All the appealed claims were rejected by the Primary Examiner, as recited in his official statement following the appeal to the board, as lacking invention over a patent 2,269,898, issued to Raymond T. Anderson January 13, 1942, upon an application filed August 21, 1939, the specification of which at its outset recites:

"This invention relates to the recovery of oil from oil-bearing materials, be they of animal or vegetable origin. More particularly, it is directed to a continuous method of treating and expressing oil-bearing material in order to produce a maximum yield of first quality oil with a minimum refining loss and a minimum percentage of oil in the expressed cake. While, as indicated, the invention is of broad general application and may be applied to the treatment of numerous oil-bearing materials, for purposes of the present description, it will be described in connection with the processing of cotton seed, inasmuch as cotton seed presents one particular problem which has been solved in a highly satisfactory manner by the practice of this invention."

All claims of the Anderson patent are apparatus claims, but the specification discloses process steps also.

A brief recitation of the development of the process defined in the involved claims may aid in understanding the issue. This is disclosed mainly in certain affidavits.

Spencer Kellogg and Sons, Inc., of Buffalo, New York, hereinafter referred to as Spencer Kellogg Company, during the time of this and prior proceedings, was engaged in the business of recovering oil from oil bearing seeds, nut meats and the like. In its employ, in the capacity of Control Superintendent, was Egbert Freyer, "P.H.D. in Chemistry from Johns Hopkins University," who is hereinafter referred to as Freyer. An elaborate affidavit by him is a part of the record.

Also in the employ of Spencer Kellogg Company, in the capacity of General Superintendent, was Theodore C. Jewett, to whom we hereinafter refer as Jewett. His affidavit is of record.

The V. D. Anderson Company, a corporation of the State of Ohio, to which was assigned the Anderson patent, the only reference cited in this case, and to which also is assigned the application before us, was engaged in the manufacture of machinery for use in expressing or recovering oil from seeds, nuts, etc. An affidavit of Raymond T. Anderson, the patentee, a vice president of The V. D. Anderson Company, is of record.

According to the affidavit of Freyer, dated June 28, 1945, the Spencer Kellogg Company had been engaged in recovering oil from seeds, nut meats, etc., for more than fifty years. He states that at the time he made the affidavit he had been continuously employed by the company for eight years, and states that during those eight years he had "become familiar with the art of oil recovery as aforesaid, including all ordinary and preferred practices, technique, and apparatus used in connection therewith." He further states:

"During 1939, and continuing into 1940, the Spencer Kellogg Company conducted a number of experiments, under my supervision, for the purpose of increasing the efficiency of our oil recovery while maintaining or even improving the quality of the oil. Representatives of various manu-

facturing firms were consulted. Various processes and machines were put in experimental operation and the results noted."

It is further stated in the affidavit that among the representatives of the various manufacturing firms consulted The V. D. Anderson Company was contacted and that Frederick W. Weigel, applicant here, "came to the Spencer Kellogg plant in Buffalo to study the Spencer Kellogg requirements, install experimental apparatus, and make recommendations." In carrying on his operations Weigel at first used apparatus substantially identical with that shown in the patent to Anderson, the application for which was then pending, it having been filed August 21, 1939. The apparatus and process are described in Freyer's affidavit as follows:

" * * * Briefly it comprises an operating assembly including a cooker, a conditioner, and one or more press elements, all in tandem in the order named. In the cooker the seed was subjected to a relatively high temperature, ten to thirty degrees above the desired oil expressing temperature, and under pressure above atmospheric for a relatively brief period of time, perhaps five or ten minutes, under vigorous agitation. The cooked seed was then advanced to a conditioner, where its moisture was reduced to the desired value, at a temperature below the cooking temperature, but not lower than the optimum oil expressing temperature. When the moisture reached the desired figure the seed was advanced to the press, and pressure applied thereto to recover the oil and the caked residue."

The affidavit then states:

"I was not satisfied with the quality of the resulting oil, although, disregarding said oil quality, there was an overall improvement in efficiency from the standpoint of time saved, quantity of oil recovered, and reduction in total man hours per unit of output. With respect to oil quality, the oil had an undesirable color, and the cake was unsatisfactory. From the sales standpoint the color of the oil is an important factor, and customers are dissatisfied with, and often will not accept, an off color oil,

especially when a better product is available. We accordingly informed Mr. Weigel that the Anderson apparatus shown in Exhibit A, attached hereto, and the method defined in the last preceding paragraph, would not satisfy our needs. Mr. Weigel continued to devote himself, at our Buffalo plant mainly, to the problem of producing an oil of good quality in a continuous process under efficient and economical conditions.

"Towards the end of 1939 Mr. Weigel installed, for an experimental try-out, an entirely new oil recovery apparatus and process adapted for continuous use. They will be hereinafter identified as the Weigel apparatus and the Weigel process, respectively. I have examined a copy of the Weigel U. S. Patent Application, Serial No. 509,037, and find that it discloses an apparatus and process which I have just termed the Weigel apparatus and process."

Since no apparatus claims are involved in this proceeding it is unnecessary to attempt a description of the so-called "entirely new oil recovery apparatus." Of the process the affidavit states:

" * * * The Weigel process required a preliminary cooking treatment for a relatively long period of time at a temperature substantially lower than the optimum oil expressing temperature for the material being pressed, which in that instance was flaxseed. The temperature was at least ten degrees lower than said optimum temperature, and the time of treatment was at least thirty minutes, and might be as much as sixty to ninety minutes. This was contrary to our pre-conceived ideas as to efficiency, but we found that by means of Mr. Weigel's apparatus there was no reduction in the quantity output of the press. The Weigel Cooker was a container of relatively large capacity capable of holding on the average eight to ten times as much seed as the Anderson cooker previously described and shown in Exhibit A. Mr. Weigel's new assembly is shown herewith, in Exhibit B.

"The Weigel Cooker is vented to atmosphere so as to operate at atmospheric pressure. It has variable feed inlet and outlet

means so as to control the amount of material in the cooker and maintain the quantity of material at a high enough figure to meet the requirements of the Weigel process.

"Immediately after the long time treatment at a relatively low temperature, the seed is continuously transferred, without time loss, to a conditioner where its temperature is raised, but need not attain, and must not exceed, the optimum oil expressing temperature, and its moisture content is reduced to a desired amount, over a period considerably reduced as compared with the cooking period. From the conditioning apparatus the seed passes to the press, its temperature being brought up to that determined as optimum for the particular material, and here the oil is expelled by heavy pressure, as is familiar to those skilled in the art."

It is further said:

"When the Weigel apparatus and process were placed in operation, an immediate improvement was noted both in the oil and the cake. The resulting oil was of excellent quality and color, and the production efficiency was increased in a number of important respects. The oil and cake were of such favorable color and quality that they could be sold readily, and were in my opinion as good as the best available, by any process. There was no doubt in my mind, at that time that our needs were satisfactorily solved by the Weigel apparatus and process."

The remainder of the affidavit relates to the matter of commercial success. It recites that up to the time the affidavit was made on June 28, 1945, the Spencer Kellogg Company had purchased from the V. D. Anderson Company sixty-five similar Weigel assemblies for use in various plants of the Spencer Kellogg Company throughout the United States at a cost in excess of seven hundred and fifty thousand dollars, and that orders for additional assemblies had been placed.

The affidavits of Jewett and Anderson are in the main merely corroborative of that of Freyer on the question of commercial success. In Anderson's affidavit, dated June 30, 1945, it is stated that in addition to the sixty-five units sold the Spencer Kellogg Company two hundred complete units had been sold to other customers at a total of more than two and one-quarter million dollars.

Because of the condition of the record in this case, we have taken the somewhat unusual course of quoting from the affidavits, particularly from that of Freyer, such descriptive matter as seems to have any relevancy here, without quoting from the decisions of the tribunals of the Patent Office.

The descriptive matter in Freyer's affidavit harmonizes with the disclosures in the reference (Anderson) patent and with those in the specification of the instant application and is practically the same as that given in the statement of the examiner following the appeal to the board and in the decision of the board. The difference between the process disclosed, but not claimed as a process in the Anderson patent, and that claimed in the instant case is, we think, stated with sufficient clearness in the relevant excerpts which we have quoted from the Freyer affidavit and no further elaboration is deemed essential.

In his statement following the appeal to the board the Primary Examiner's only reference made to the affidavits reads:

"The affidavits indicate the commercial value of the process and here unclaimed apparatus. The question as to invention as distinguished from utility is not resolved by the evidence presented."

The Board of Appeals referred to the Freyer affidavit only and commented thereon as follows:

" * * * It is indicated in an affidavit filed in this application that the oil produced according to the Anderson method had an undesirable color which failed to satisfy the affiant, Dr. Egbert Freyer, Control Superintendent, although the Anderson process resulted in an overall improvement in efficiency from the standpoint of time saved, quantity of oil recovered and re-

duction in total man hours per unit of output, *which seems to have been the object of the Anderson invention."* (Italics supplied.)

No comment was made by the board on the question of commercial success.

Both the examiner and the board were of opinion that the process defined in the appealed claims "produces," as expressed by the board, "no more than a difference in degree in the final result over the results produced by Anderson."

 We feel constrained to disagree with this holding. The opinion was expressed by the board, as quoted *supra,* that the apparent object of the Anderson invention was an overall improvement in efficiency from the standpoint of time saved, *quantity* of oil recovered, and the reduction in total man hours per unit of output. Nothing was said in the patent with respect to improvement in the color, or *quality,* of the oil and in the cake, which, according to the affidavit of Freyer, are factors of great importance—at least of great commercial importance. That the process of the application does differ from that disclosed by the reference is clear, we think, and the product which results from the process of the application is novel and useful. It did not result from the application of the Anderson process but from modifications of that process made by Weigel, seemingly after extensive experimentation. It seems to us that if the affidavits in this case are to be credited (particularly the elaborate one of Freyer and the corroborative one given by Jewett, who, so far as the record shows, have no financial interest in this case) the work of Weigel amounted to more than mere mechanical skill. We think the process is shown to have been novel and useful and that it is entitled to be classed as inventive. It may be added that, in our opinion, the showing of success made here, while standing alone would not be conclusive, is a factor entitled to some weight, and we have considered it in arriving at our conclusion.

The decision of the Board of Appeals is reversed as to all the appealed claims.

Reversed.